**AFFIRM; and Opinion Filed July 13, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-15-00525-CV

**DONALD DAVIS, Appellant**
**V.**
**THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellee**

**On Appeal from the 301st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-05-01417-T**

## MEMORANDUM OPINION

Before Justices Francis, Fillmore, and Schenck
Opinion by Justice Fillmore

The Office of the Attorney General of Texas (the OAG) filed a petition for confirmation of a child support review order (CSRO), requesting, as relevant to this appeal, that the trial court establish the parent-child relationship between Donald Davis and Q.I.H.; confirm a child support arrearage of $2,400; and render judgment against Davis, and in favor of the OAG, for the amount of the child support arrearage. The trial court dismissed the case for want of prosecution by the OAG and ordered that "all costs of court be taxed against party incurring same." Davis appealed, arguing he was the prevailing party in the case, and the trial court erred by not taxing certain costs against the OAG and by "not holding evidentiary hearing on post judgment sanction motion and/or allowing motion to be overruled by operation of law without evidentiary hearing or grant motion based on case file." We affirm the trial court's judgment.

**Background**

Pursuant to chapters 231 and 233 of the family code, the OAG filed a petition for confirmation of a CSRO on January 26, 2005. The petition identified Davis as Q.I.H.'s biological father and requested service on Davis. Attached to the petition was a proposed CSRO reflecting that the OAG and S.H., the mother of Q.I.H., participated in a "negotiation conference" on November 3, 2004, and Davis, although duly notified, did not attend the meeting.

On August 25, 2005, the trial court ordered that genetic tests be performed on Davis and Q.I.H. to determine parentage. Although the genetic testing was not performed, on August 3, 2006, the trial court signed the proposed CSRO. As relevant to this appeal, the trial court found that Davis was Q.I.H.'s biological father and ordered that the parent-child relationship was established between Davis and Q.I.H. Because Davis was incarcerated, the trial court declined to make any findings regarding ongoing child support, but found Davis owed retroactive child support in the amount of $2,400. The trial court granted judgment against Davis, and in favor of the OAG, for $2,400 for retroactive child support and $142 for the costs of the parentage testing.

Davis appealed, arguing the trial court abused its discretion by signing the CSRO because he had timely denied paternity and requested genetic testing, which was never performed. *See In re Q.I.H.*, No 05-06-01351-CV, 2007 WL 4126506 (Tex. App.—Dallas Nov. 21, 2007, no pet.) (mem. op.). The OAG agreed the case should be reversed and remanded for a new trial in the interest of justice. *Id.* at *1. On November 21, 2007, we reversed the trial court's August 3, 2006 order and remanded the case to the trial court for further proceedings. *Id.* Davis filed a motion to dismiss on February 21, 2008, requesting the trial court dismiss the case due to the OAG's failure to prosecute it and asserting he was entitled to recover "any and all expenses" as the prevailing party. The trial court appointed an attorney ad litem for Davis on March 21, 2008, and counsel filed a general denial on Davis's behalf.

The record does not reflect any further activity in the case until September 6, 2011, when the Texas Department of Family and Protective Services (the Department) filed an Original Petition for Protection of a Child(ren), for Conservatorship and for Termination, in the Suit Affecting the Parent-Child Relationship (the conservatorship proceeding), seeking to be named the managing conservator of Q.I.H. because S.H. had been arrested. The Department alleged Davis was Q.I.H.'s biological father and requested that he be served with the petition. Davis filed a pro se answer, asserting it had not been established that he was Q.I.H.'s biological father. Davis specifically pleaded that counsel had been appointed to represent him and had assured him that the case seeking the CSRO had been dismissed. Davis requested he be declared a "non-party" in the conservatorship proceeding or, alternatively, that genetic testing be performed to determine parentage. Although there is no reporter's record of the hearing, the trial court's docket sheet indicates that, on April 12, 2012, the trial court ordered genetic testing be performed on Davis and Q.I.H.

The trial court ordered S.H. to complete a psychological evaluation, counseling, and parenting classes and to be subject to random drug testing. S.H. participated in the ordered services, and, on June 21, 2012,[1] the trial court signed an order of monitored return in the conservatorship proceeding, returning possession of Q.I.H. to S.H. The Department filed a motion to nonsuit its claims on July 25, 2012.

On December 8, 2014, the trial court sent notice to the OAG, S.H., and Davis that it would dismiss the case unless it was shown at a hearing on January 22, 2015, that there was good cause to maintain the case on the docket. On January, 29, 2015, the trial court dismissed the case

---

[1] The order states it was signed on June 21, 2011. It also states, however, that a hearing was held on June 21, 2012, and the hearing was held "prior to the tolling of the one year anniversary date." Accordingly, we conclude the June 21, 2011 date was a clerical error.

for want of prosecution and ordered that "all costs of court be taxed against party incurring same."

Davis filed a *pro se* Request for Taxation and Bill of Cost on February 6, 2015, and subsequently amended the motion twice. In his Second Amended Request/Motion for Sanctions/Taxation and Bill of Cost under Frivolous Claim Act, Davis requested he be awarded $172 for the court costs the trial court ordered him to pay in 2006,[2] as well as $3,852 for the "debt claimed by [the OAG] reported to my credit file from judgment entered August 3, 2006."[3] Davis asserted he was entitled to this award pursuant to rules of civil procedure 13, 127, 129, and 131 and sections 31.007(a), (b)(4) and 105.002(1), (2) of the civil practice and remedies code. *See* TEX. R. CIV. P. 13, 127, 129 and 131; TEX. CIV. PRAC. & REM. CODE ANN. §§ 31.007(a), (b)(4) (West 2015), 105.002 (West 2011). The trial court did not rule on Davis's motion and, on April 23, 2015, Davis filed this appeal.

### Failure to Conduct Hearing or Take Judicial Notice

In his second issue, Davis argues the trial court erred by failing to conduct an evidentiary hearing on his *pro se* motion or, in the absence of such a hearing, to grant the motion based on the court's file. In civil cases, a party is entitled to represent himself or to be represented by an attorney. TEX. R. CIV. P. 7; *In re Sondley*, 990 S.W.2d 361, 362 (Tex. App.—Amarillo 1999, orig. proceeding) (per curiam). He is not, however, entitled to be represented partly by counsel and partly *pro se*. *In re T.L.B.*, No. 05-13-01671-CV, 2015 WL 1850995, at *2 (Tex. App.—Dallas Apr. 23, 2015, no pet.) (mem. op.) (citing *In re Sondley*, 990 S.W.2d at 362; *Posner v.*

---

[2] It appears this amount is based on the $142 the trial court ordered Davis to pay for genetic testing. There is no evidence in the record that Davis ever paid either $142 or $172 for genetic testing.

[3] This amount is based on letters Davis received from the OAG stating it would report to credit reporting agencies Davis's failure to pay the child support arrearage and accrued interest. There is no evidence in the record that the OAG actually reported to any credit reporting agency that Davis failed to pay any amount of child support and accrued interest.

*Dallas Cnty. Child Welfare Unit of Tex. Dep't of Human Servs.*, 784 S.W.2d 585, 588 (Tex. App.—Eastland 1990, writ denied) (per curiam)).

In the trial court, Davis was represented by counsel in the proceedings relating to confirmation of the CSRO. Accordingly, the trial court did not have a mandatory duty to accept or consider Davis's *pro se* motion and did not err by failing to consider the motion either by holding an evidentiary hearing or taking judicial notice of the case file. *See In re Sondley*, 990 S.W.2d at 362; *In re Stanley*, 2015 WL 4054451, at *1 (Tex. App.—Beaumont July 1, 2015, orig. proceeding) (per curiam). We resolve Davis's second issue against him.

### Court Costs

In his first issue, Davis contends he was the prevailing party in the case and, pursuant to rule of civil procedure 131, the trial court erred by not assessing certain costs against the OAG.[4] To the extent Davis's complaint is based on his *pro se* post-judgment motion, the trial court was not required to accept or consider that motion. *In re Sondley*, 990 S.W.2d at 362; *In re Stanley*, 2015 WL 4054451, at *1. However, even if the trial court had considered Davis's *pro se* motion, he would not have been entitled to the requested relief.

We review a trial court's award of costs for an abuse of discretion. *Blaylock v. Holland*, No. 05-13-01197-CV, 2014 WL 3736210, at *2 (Tex. App.—Dallas July 14, 2014, no pet.) (mem. op.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, that is, when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *Blaylock*, 2014 WL 3736210, at *2.

---

[4] In his reply brief, Davis also argues the trial court erred by not sanctioning the OAG under rule of civil procedure 13 and the "Frivolous Claim Act." Generally, we will not consider arguments raised for the first time in a reply brief. *The Burrescia Family Revocable Living Trust v. City of Dallas*, No. 05-14-01311-CV, 2016 WL 1393989, at *4 n.6 (Tex. App.—Dallas Apr. 7, 2016, pet. denied) (mem. op.) (citing *Humphries v. Advanced Print Media*, 339 S.W.3d 206, 208 (Tex. App.—Dallas 2011, no pet.); *Dallas Cnty. v. Gonzales*, 183 S.W.3d 94, 104 (Tex. App.—Dallas 2006, pets. denied)).

Rule of civil procedure 131 provides that the "successful party to a suit shall recover of his adversary all costs incurred therein, *except where otherwise provided*." TEX. R. CIV. P. 131 (emphasis added). Davis argues he was the prevailing party in this case and the costs for genetic testing and for the amount of child support arrearage and accrued interest that the OAG informed him would be reported to a credit reporting agency should have been taxed against the OAG. The OAG responds that it was acting as a Title IV-D agency in a Title IV-D case, and the trial court was barred by statute from assessing the requested costs against the OAG.

A "Title IV-D case" is an action in which a Title IV-D agency provides services under Part D, Title IV, of the federal Social Security Act, 42 U.S.C. §§ 651–69b (West 2011 & Supp. 2016), relating to the location of an absent parent; determination of parentage; or establishment, modification, or enforcement of a child support or medical support obligation. TEX. FAM. CODE ANN. § 101.034 (West Supp. 2015); *see also* 42 U.S.C. § 654(4) (West Supp. 2016). In Texas, the OAG is designated to provide Title IV–D services. TEX. FAM. CODE ANN. § 231.001 (West Supp. 2015); *see also Office of Attorney Gen. v. Scholer*, 403 S.W.3d 859, 862 (Tex. 2013) (OAG is designated Title IV-D agency in Texas). The OAG and S.H. participated in a negotiation conference pursuant to chapter 233 of the family code, which sets out the child support review process to establish or enforce child support obligations. The purpose of the child support review process is to "enable the Title IV-D agency to take expedited administrative actions to establish, modify, and enforce child support and medical support obligations, to determine parentage, or to take any other action authorized or required under Part D, Title IV, of the federal Social Security Act . . . and Chapter 231 [of the family code]." TEX. FAM. CODE ANN. § 233.001(a) (West Supp. 2015). Acting as the Title IV-D agency, the OAG filed this action, seeking to establish Davis was the parent of Q.I.H. and to confirm a child support

arrearage.  *See* TEX. FAM. CODE ANN. §§ 233.020 (West 2014), 233.028 (West Supp. 2015)

Accordingly, this case is a Title IV-D case.

Other than certain identified costs,[5] section 231.204 of the family code prohibits the assessment of court costs against the Title IV-D agency in a Title IV-D case.  TEX. FAM. CODE ANN. § 231.204 (West 2014);[6] *Office of Attorney Gen. v. Lee*, 92 S.W.3d 526, 528 (Tex. 2002) (per curiam).  Further, section 231.211(a) of the family code states:

> At the conclusion of a Title IV-D case, the court may assess attorney's fees and all court costs as authorized by law against the nonprevailing party, except that the court may not assess those amounts against the Title IV-D agency or a private attorney or political subdivision that had entered into a contract under this chapter

[5] Section 231.202 of the family code provides the Title IV-D agency in a Title IV-D case "shall pay only" the following costs and fees:

(1)  filing fees and fees for issuance and service of process as provided by Chapter 110 of this code and by Sections 51.317(b)(1), (2) and (3) and (b-1), 51.318(b)(2), and 51.319(2), Government Code;

(2)  fees for transfer as provided by Chapter 110;

(3)  fees for the issuance and delivery of orders and writs of income withholding in the amounts provided by Chapter 110;

(4)  the fee for services provided by sheriffs and constables, including:

(A)  a fee authorized under Section 118.131, Local Government Code, for serving each item of process to each individual on whom service is required, including service by certified or registered mail; and

(B) a fee authorized under Section 157.103(b) for serving a capias;

(5)  the fee for filing an administrative writ of withholding under Section 158.503(d);

(6)  the fee for issuance of a subpoena as provided by Section 51.318(b)(1), Government Code; and

(7)  a fee authorized by Section 72.031, Government Code, for the electronic filing of documents with a clerk.

TEX. FAM. CODE ANN. § 231.202; *see also Office of Attorney Gen. v. Lee*, 92 S.W.3d 526, 528–29 (Tex. 2002) (per curiam).

[6] Section 231.204 of the family code provides:

Except as provided by this subchapter, an appellate court, a clerk of an appellate court, a district or county clerk, sheriff, constable, or other government officer or employee may not charge the Title IV-D agency or a private attorney or political subdivision that has entered into a contract to provide Title IV-D services any fees or other amounts otherwise imposed by law for services rendered in, or in connection with, a Title IV-D case, including:

(1)  a fee payable to a district clerk for:

(A)  performing services related to the estates of deceased persons or minors;

(B)  certifying copies; or

(C)  comparing copies to originals;

(2)  a court reporter fee, except as provided by Section 231.209;

(3)  a judicial fund fee;

(4)  a fee for a child support registry, enforcement office, or domestic relations office;

(5)  a fee for alternative dispute resolution services;

(6)  a filing fee or other costs payable to a clerk of an appellate court; and

(7)  a statewide electronic filing system fund fee.

TEX. FAM. CODE ANN. § 231.204.

or any party to whom the agency has provided services under this chapter.  Such fees and costs may not exceed reasonable and necessary costs as determined by the court.

*Id.* § 231.211(a).

The costs sought by Davis do not fall within the specified costs that may be taxed against the OAG, as the Title IV-D agency, at the conclusion of a Title IV-D case.  *See* TEX. FAM. CODE ANN. § 231.202.  Accordingly, the trial court was statutorily prohibited from assessing those costs against the OAG, *see* TEX. FAM. CODE ANN. §§ 231.204, 231.211; *Lee*, 92 S.W.3d at 528–29; *Target Logistics, Inc. v. Office of Attorney Gen.*, 465 S.W.3d 768, 770 (Tex. App.—El Paso 2015, no pet.), and did not abuse its discretion by failing to tax these costs against the OAG pursuant to rule of civil procedure 131.[7]  We resolve Davis's first issue against him.

We affirm the trial court's judgment.

/Robert M. Fillmore/
_____
ROBERT M. FILLMORE
JUSTICE

150525F.P05

---

[7] Based on our resolution of this issue, we do not address whether the sums requested by Davis are "costs" subject to allocation under rule of civil procedure 131.  *See* TEX. R. APP. P. 47.1.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DONALD DAVIS, Appellant

No. 05-15-00525-CV        V.

THE OFFICE OF THE ATTORNEY
GENERAL OF TEXAS, Appellee

On Appeal from the 301st Judicial District
Court, Dallas County, Texas,
Trial Court Cause No. DF-05-01417-T.
Opinion delivered by Justice Fillmore,
Justices Francis and Schenck participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee The Office of the Attorney General of Texas recover its costs of this appeal from appellant Donald Davis.

Judgment entered this 13th day of July, 2016.